UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Veronica Sanders-Lee,

          Plaintiff

v.

Clark County,

          Defendant

Case No. 2:21-cv-00019-CDS-BNW

**Order Granting Defendant's Motion for Summary Judgment and Closing Case**

[ECF No. 22]

      This is a civil-rights action brought by plaintiff Veronica Sanders-Lee, alleging that she was wrongfully terminated from her position with the Clark County Department of Family Services, in violation of the Americans with Disabilities Act (ADA).[1] Sanders-Lee further alleges that Clark County's actions also violated Nevada's anti-discrimination laws. Clark County moves for summary judgment, arguing that Sanders-Lee fails to meet the prima facie elements of her discrimination claim because she is not a qualified individual under the ADA. I find that there is no genuine dispute that Sanders-Lee would not have been able to perform the essential functions of the Senior Family Services Specialist position, either with or without a reasonable accommodation, and that she has not demonstrated the existence of a position to which she should have been reassigned. For those reasons, I find that Sanders-Lee was not a qualified individual under the ADA and that summary judgment in Clark County's favor on all claims is appropriate. I direct the Clerk of Court to close this case.

---

[1] Sanders-Lee also brings a retaliation claim, which she now voluntarily dismisses. ECF No. 28 at 19.

I.  Background

    a.  *Sanders-Lee is hired as a Senior Family Services Specialist (SFSS).*

Sanders-Lee was hired as a SFSS with the Clark County Department of Family Services (DFS) in September 2018. Compl., ECF No. 1 at 3. The SFSS "performs a variety of professional child welfare and protection duties to support the safety, permanency[,] and wellbeing of children." ECF No. 22 at 3 (citing Ex. A, Job Posting Listing, ECF No. 22-2; Ex. R, Nellis Decl., ECF No 22-19). The SFSS position requires the employee to meet certain minimum employment qualifications. The job listing stated that a qualified individual must be willing to work under potentially abusive, hazardous, or emergency conditions, and that she must provide proof of a valid driver's license. ECF No. 22-2 at 3.

Some examples of SFSS duties include home visits, regular monitoring, crisis intervention, home studies, driving a motor vehicle to transport children, and going to court or detention facilities. *Id.* at 2–5. Requirements for the job include "standing and/or walking for an extended period of time" and "strength to restrain and/or eject individuals." *Id.* Other physical demands described in the job posting include "being capable of commuting to various off-site locations in order to attend meetings or make on-site visits," and "mobility and stamina to assist families experiencing crisis and support child safety and well-being." *Id.* at 4–5. The SFSS job listing also provides different examples of duties that a SFSS may be assigned to complete or staffed to accomplish. *Id.* at 3–4 (citing ECF No. 22-2 at 3–5; ECF No. 22-19). Those duties were listed as "Child Protective Services (CPS) & Hotline"; "Child Receiving/Placement"; "Shelter/Family Visitation Services"; "Permanency Case Management (Out of Home, In-Home and Adoptions)[,]" and "Foster Parent Recruitment and Licensing." *Id.* at 4 (citing ECF No. 22-2 at 3–5, and ECF No. 22-19).

While Sanders-Lee does not dispute these facts, she states that she did not see the details of the job description prior to getting hired. ECF No. 28 at 6. She claims that she did not see the details of the job description online, that she was made aware of her job title only after

she was hired, and that she did not learn of her specific job location until the end of the prerequisite training academy. *Id.* Sanders-Lee also states that when she was hired, she did not know that Clark County was filling an open position in the Child Protective Services[2] and Permanency Case Management team.[3] *Id.* She also submits that she did not know the specifics of the SFSS position and was not made aware of the physical requirements of the job during her interview or throughout her four-month training academy. ECF No. 28 at 8.

In support of its motion, Clark County cites to the results of a 2005 SFSS position job analysis, the results of which determined that there were eight essential functions of that job: (1) conducting child abuse investigations; (2) interviewing children, parents, neighbors, school representatives, medical providers, and others; (3) developing treatment plans; (4) teaching and modeling parenting skills; (5) working with community members, to include testifying in court and enforcing court orders; (6) developing and maintaining records; (7) working with office equipment (such as a computer) and driving a vehicle to conduct home visits and transport children or family members; and (8) completing other work-related activities, as needed. ECF No. 22-3 at 2. That same job analysis identified the SFSS position as having a number of physical demands, such as standing for between three and six hours a day, lifting between 26 and 50 pounds, and pushing and pulling between 76 and 100 pounds. *Id.* at 3. The activities that correlate to these demands are lifting and carrying children, installing car seats, carrying boxes of paper records, restraining clients, and assisting during emergency situations. *Id.* at 2–4.

  b. *Sanders-Lee advises her supervisor that she has a disability.*

Sanders-Lee's training required her to take a "lengthy and unusual field trip and take a public bus so [she could] know what it [was] like to do so." *Id.* at 4. She struggled to walk to several locations and requested that her training academy "coach" (identified as Roscoe) pick her up—instead of riding the bus—so that she would not have to walk. ECF No. 1 at ¶ 14; ECF

---

[2] This is called "Nevada Initial Assessment" today.

[3] Sanders-Lee does not indicate what position or role she believed she was being hired to fill.

3

No. 28 at 33–34. After having issues with the bus segment of the training academy, Sanders-Lee informed Roscoe that she had a disability that prevented her from walking long distances. Sanders-Lee admits that she contacted Roscoe after a full day of walking to and from bus stops and three different locations. ECF No. 28 at 11; 34–36. Sanders-Lee confirms that she said her "legs would probably be physically exhausted and give way if [she] was required to make multiple home visits or carry a 'kid' as [her] job requires," but that such exhaustion would only happen during a flare up.[4] *Id.* at 11–12. She submitted to Roscoe a doctor's note indicating that she could neither climb stairs nor stand or walk for prolonged periods of time. *Id.* at 16; ECF No. 28 at 39.

On December 7, 2018, the day after Sanders-Lee informed Roscoe of her knee injury and made the request to no longer be required to walk long distances, Clark County's Office of Diversity started the interactive process required by the ADA.[5] ECF No. 22-20 at 2–3. As part of that process, Sanders-Lee saw Dr. Roslyn Weingarten to complete a medical certification for an ADA Accommodation. ECF No. 22-8 at 2–3. Clark County also sent a letter to the doctor advising that Sanders-Lee was seeking a work-related accommodation under the ADA and that the doctor must review the SFSS job duties and provide a medical opinion regarding whether Sanders-Lee could perform her job duties with her medical condition. *Id.* at 7; Ex. S, ECF No. 22-20 at 2–3. Dr. Weingarten examined Sanders-Lee and determined that she suffered from bilateral knee pain and as a result, was unable to (1) safely lift children, (2) walk up stairs, or (3) stand and walk. Weingarten Evaluation, ECF No. 22-8 at 2–3. Dr. Weingarten found that Sanders-Lee needed employment at which she could sit without weight bearing and concluded that this restriction would be a permanent lifelong restriction. *Id.* at 3.

---

[4] Sanders-Lee also states that her knee can buckle and that walking long distances is difficult, but only during flare ups. ECF No. 28 at 11. Sanders-Lee defines a long distance by her "level of pain," but she uses the example of a "1/2 mile on a rocky sidewalk[.]" *Id.*

[5] The Office of Diversity is the department within Clark County that evaluates and determines whether an employee is disabled and whether that employee can perform the essential functions of her job, either with or without an accommodation. Bonilla Decl., Ex. S, ECF No. 22-20 at 2.

4

While Sanders-Lee had issues after the field trip requirement of her training academy, she submits that she was able to perform the other essential duties of a field worker during the job training. Such training occurred every Friday and included shadowing "staff in the field as they went to various visits (i.e., home, school, jail, court and other locations)." ECF No. 28 at 12. Sanders-Lee also contends that she was able to "stand, walk, climb stairs[,] and on one occasion [she] sat on the floor because the family did not have any furniture." *Id.*

   *c. Additional information about the parties' interactive process.*

As part of the interactive process, Sanders-Lee was interviewed by the Office of Diversity. At the beginning of the interview, the interviewer informed Sanders-Lee of the possible outcomes of her ADA accommodation request. Audio Rec., ECF No. 22-18 at 0:30–1:53. Sanders-Lee responds that she understood that the job requirements would include working with families and children in the system, going in to the field to make visits, attending court, and doing lots of movement and walking. ADA Interview Notes, ECF No. 22-9 at 2.

Sanders-Lee adds that she decided to inform her supervisor of her disability after the "bus ride" that involved "a lot of walking." ECF No. 22-18 at 6:45–7:30. Sanders-Lee also advised that she started having trouble walking and standing for long periods in 2014 after she broke some toes. ECF No. 22-9 at 2, 5; ECF No. 22-18 at 8:23–9:44. Thereafter, she had a flareup with her sciatica and hip. ECF No. 22-18 at 9:17–9:26. Her inability to stand for a long time became an issue because her leg would go numb. *Id.* at 9:27–9:34. As a result, she began using carts to help her get around supermarkets, and she continued using the carts through the date of the interview. *Id.* at 9:35–9:44. She stated that since 2014, she had been to the doctor numerous times to address issues relating to the numbness in her legs. *Id.* at 11:16–11:30.

Sanders-Lee also states in the interview that she was previously employed in California as a therapist and was required to work in the field, outside of the office. *Id.* at 12:00–12:10. But after her 2014 injury, she got a promotion that involved a desk job supervising individuals, which naturally made that position more accommodating. *Id.* at 12:11–12:22. Sanders-Lee disputes that

5

she was promoted as part of her accommodation; rather, she argues that she was qualified for the promotion, and the accommodation for her injury was purely incidental to the promotion. ECF No. 28 at 11; ECF No. 22-18 at 17:55–18:11.

During the interview, Sanders-Lee also shared some of the ways in which she modified her physical activity after her 2014 injury. *Id.* at 17:55–18:11. She advised that some personal modifications included using a cane while walking long distances. *Id.* at 14:20–14:26. She had recently opted not to attend her nephew's college graduation because it would have involved a lot of walking for her. *Id.* at 16:20–16:34. Sanders-Lee also stated that depending on her level of pain, she might, at times, consider one block a long distance to walk. *Id.* at 20:15–22:29. She also acknowledged that during her training, she observed employees performing activities that required a lot of physical abilities. *Id.* at 25:12–27:05.

The interviewer asked Sanders-Lee if she knew that her job would[6] require her to walk long distances. *Id.* at 22:45–23:40. Sanders-Lee responded that her ability to perform would depend on each assignment, such as whether she would need to make numerous home visits in one day or any home visits that involve using stairs. *Id.* As an example, she expressed concern with her ability to carry an infant. *Id.* Sanders-Lee and the interviewer also discussed the findings by Dr. Weingarten. When asked if she was seeking an accommodation, Sanders-Lee responded that she sought "not a lot of long-distance walking or in & out of car; a seated desk job (possibly intake)."[7] *Id.* at 35:40–35:55; ECF No. 22-9 at 3, 7. Sanders-Lee also discussed a "hotline" position that would not require going out into the field as a possible reasonable accommodation. ECF No. 22-18 at 35:55–36:24. When asked what Sanders-Lee would consider

---

[6] The question was posed in the future subjunctive tense (i.e., the job "would" require her to walk) rather than the present (i.e., the job "does" require her to walk) because Sanders-Lee had not yet been officially assigned to a particular job; she was still in the training academy at the time of the interview.

[7] In response to interrogatories in this case, Sanders-Lee added that she requested a position that would not require picking up children. ECF No. 22-17 at 7. In her affidavit, Sanders-Lee states that when posed the question about what accommodation she was seeking, the interviewer was asking a "hypothetical question," as part of a brain-storming conversation, and ultimately that her response to the question was based on her concerns about issues during "flare ups." ECF No. 28 at 12.

1  to be a reasonable accommodation if a seated or desk job were not available, Sanders-Lee
2  responded that perhaps a "perm" (construed as a "permanency" position, *i.e.*, a position with the
3  "Permanency Case Management" team, whose job functions included "on-going assessment of
4  the future risk of harm to children," "crisis intervention," and conducting "home studies to assess
5  placement options for children being adopted") would work. *Id.* at 36:15–37:30; ECF No. 22 at
6  13–14.

7       Clark County argues that, prior to terminating Sanders-Lee, it intended to hire her for
8  the Permanency Case Management team, which makes frequent home visits. ECF No. 22-2 at 4;
9  SFSS Academy Roster, ECF No. 22-6. It states that all of the other individuals who participated
10 in and graduated from the same training academy as Sanders-Lee were assigned to either
11 "Permanency Case Management" or "Nevada Initial Assessment"; both assignments require
12 fieldwork and frequent home visits and would not be considered sedentary or "desk jobs." *See*
13 ECF No. 22-6 (listing the employees as being placed with either "perm" or "NIA," with two
14 exceptions). Clark County states that the two exceptions involved individuals from the same
15 class that were hired for specific grant positions with the "Differential Response" team, but that
16 such positions also required fieldwork and frequent home visits. *Id.*; ECF No. 22-19 at 4–5.

17      d.   *Clark County finds that Sanders-Lee is disabled but is not a qualified individual under the ADA.*

18      At the conclusion of the interactive process, the Office of Diversity determined that (1)
19 Sanders-Lee was disabled but was not a qualified individual under the ADA because she was not
20 able—nor was she ever able—to perform the essential functions of the SFSS job for which she
21 was hired, and (2) there were no accommodations that could assist her in performing those
22 essential functions. ADA Determination Letter, ECF No. 22-10 at 2–3; ADA Reassignment
23 Letter, ECF No. 22-1 at 2–4; ECF No. 22-20 at 3. Sanders-Lee was terminated from her SFSS
24 position via mail sent by DFS. *See* ECF No. 22-12 at 2. The letter stated that she was terminated,
25 effective December 18, 2018, because she failed to complete her probationary period. *Id.* Sanders-
26 Lee argues that the Office of Diversity did not allow her to complete her probationary period,

7

that she was advised that she could apply for other positions, and that she did not receive any responses for the additional positions to which she applied. ECF No. 28 at 12.

      e.  *Sanders-Lee files a complaint with the EEOC and then brings this action.*

On June 21, 2019, Sanders-Lee filed a complaint with the Equal Employment Opportunity Commission (EEOC) for disability discrimination. ECF No. 22-13. After an investigation, the EEOC determined that it was unable to conclude that there was any violation. ECF No. 22-14. On January 5, 2021, Sanders-Lee filed the instant complaint against Clark County for wrongful termination under the ADA,[8] retaliation under the ADA, and for violation of Nevada's antidiscrimination statutes. ECF No. 1.

## II.   Legal standard

Rule 56(c) provides that summary judgment must be granted when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted). The movant bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, then the moving party wins. *Id.* Conclusory, speculative testimony in affidavits and moving

---

[8] The complaint references the "ADAA," in referring to the Americans with Disabilities Act of 1990 and amendments thereto; I use the initialism "ADA," but intend it as a reference to the same legislation.

papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III. Analysis

    a. *Summary judgment on Sanders-Lee's ADA & state-law discrimination claims is appropriate because she cannot establish a prima facie case of disability discrimination.*

Sanders-Lee brings a claim alleging wrongful termination in violation of the ADA, as well as a state-law discrimination claim. *See generally* ECF No. 1. "A claim for disability discrimination under the Nevada [anti-discrimination] statute is evaluated under the same standard as a federal ADA claim." *Ramirez v. Wynn Las Vegas, LLC*, 2022 WL 3715751, at *7 (D. Nev. Aug. 29, 2022); *see also Littlefield v. Nevada, ex. rel. Dep't of Public Safety*, 195 F. Supp. 3d 1147, 1152 (D. Nev. 2016) ("Nevada courts apply the ADA approach to plaintiff's state law claims."). I thus analyze Sanders-Lee's state-law and ADA claims together.

In resolving summary-judgment motions for ADA claims, courts apply the burden-shifting analysis derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 (2003) (applying *McDonnell Douglas* burden-shifting framework to ADA disability-discrimination claim). Under that burden-shifting analysis, a plaintiff must establish a prima facie case by showing three factors: (1) she is a disabled person within the meaning of the statute; (2) she is a qualified individual with a disability; and (3) she suffered an adverse employment action because of her disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). Failing to establish any of these elements is fatal to an ADA claim. *See, e.g., Bradley v. Harcourt, Brace & Co.*, 104 F.2d 267, 272 (9th Cir. 1996) (affirming grant of summary judgment when plaintiff "failed to produce evidence showing that she has a disability"). If a plaintiff establishes her prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Raytheon*, 540 U.S. at 49 n.3. If a defendant proffers a nondiscriminatory reason for termination, "the presumption of intentional

discrimination disappears," but the plaintiff can still prove disparate treatment by offering evidence that a defendant's proffered reason is pretextual. *Id.* (citation omitted).

Applying this legal framework, I find that Sanders-Lee's ADA wrongful-termination claim fails because she cannot establish a prima facie case of disability discrimination. However, as for the first prong of the analysis, she has met her burden in demonstrating that she is a disabled person within the meaning of the statute. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). When deciding whether an impairment is substantially limiting, courts "must consider the nature and severity of the [plaintiff's] impairment, the duration or expected duration of the impairment, as well as the permanent or long-term impact of the impairment." *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003) (internal citations omitted). The defendant does not dispute that Sanders-Lee has a disability (namely, her inability to walk long distances or lift significant amounts of weight). Indeed, the Office of Diversity itself determined that Sanders-Lee was "an individual with a disability within the meaning of the ADA." OOD Letter, ECF No. 28 at 41. I agree.

Sanders-Lee must next demonstrate that she is a qualified individual. A "qualified individual" with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Determining if a person is a "qualified individual" under the ADA is a two-step inquiry. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). First, the court must determine if the plaintiff "satisfies the 'requisite skill, experience, education[,] and other job-related requirements' of the position." *Id.* at 990 (quoting 29 C.F.R. § 1630.2(m)). The court then considers whether the plaintiff can, with or without a reasonable accommodation, perform the essential functions of the employment position that such individual holds or desires." 29 C.F.R. § 1630.2(m); 42 U.S.C. § 12111(8); *Johnson v. Bd. of Trustees of Boundary Cnty. Sch. Dist. No. 101*, 666 F.3d 561, 565 (9th Cir. 2011) (citing 29 C.F.R. §

1630.2(m)). Essential functions are the "fundamental job duties of the employment position . . . not including the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). The court shall consider "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). "Such evidence, however, is not conclusive: 'an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description.'" *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (quoting *Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001)).

Here, Clark County has the burden of production in establishing what job functions are essential, as "much of the information which determines those essential functions lies uniquely with the employer." *Bates*, 511 F.3d at 991 (citing *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1113 (8th Cir. 1995)) (citations and internal quotation marks omitted). To meet its burden of production, Clark County "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding" favorable to them. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks omitted). The evidence that Clark County provides identifies the essential functions of the SSFS job to include: (1) conducting child abuse investigations; (2) interviewing children, parents, neighbors, school representatives, medical providers, and others; (3) developing treatment plans; (4) teaching and modeling parenting skills; (5) working with community members, to include testifying in court and enforcing court orders; (6) developing and maintaining records; (7) working with office equipment (such as a computer) and driving a vehicle to conduct home visits and transport children or family members; and (8) completing other work-related activities, as needed. ECF No. 22-3. An analysis of the job's duties identified that the SFSS position had a number of physical demands, such as standing for between three and six hours a day, lifting between 26 and 50 pounds, and pushing and pulling between 76 and 100 pounds. *Id.* at 3. Clark County

1 argues that Sanders-Lee cannot perform the essential functions of the job because of her physical
2 limitations—as according to Dr. Weingarten, Sanders-Lee's knee injury prohibits her from safely
3 lifting children, walking upstairs, and standing and walking. ECF No. 22-8 at 7.

4 Sanders-Lee contests whether walking, climbing stairs, standing, picking up children,
5 and the other job requirements are, in fact, essential functions, and whether the physical
6 requirements of the SFSS position as advanced by Clark County are accurate. ECF No. 28 at 17.
7 Sanders-Lee claims that walking long distances or prolonged standing was "likely marginal" and
8 "likely out of the ordinary." ECF No. 28 at 16. She also claims that she could have been "easily
9 assigned to work a desk job[,]" an argument I address further *infra. Id.*

10 Sanders-Lee has failed to meet her burden of demonstrating that she was a qualified
11 individual because, even if she meets the first step of the qualified-individual analysis in
12 demonstrating that she had the skills, experience, and education necessary to act as an SFSS, she
13 merely speculates as to the second-step of the analysis: namely, that she could perform some of
14 the essential functions of the job, like walking and standing for a long periods of time. Her
15 affidavit in support of her opposition to the motion is insufficient to create a genuine dispute of
16 material fact as to that second step. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.
17 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is
18 insufficient to create a genuine issue of material fact"). Similarly, a plaintiff's opinions and
19 speculation about the essential functions of the position are insufficient to create a genuine issue
20 of material fact. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation
21 and speculation do not create a factual dispute for purposes of summary judgment"). On the
22 other hand, Clark County has identified the essential functions of the job—which include
23 walking and standing for long periods, as well as other physical activities that would limit
24 Sanders-Lee's ability to complete her SFSS duties. There is no requirement that an employer
25 exempt an employee from performing the essential functions of a job. *Dark v. Curry Cty.*, 451 F.3d
26 1078, 1089 (9th Cir. 2006).

In addition, Sanders-Lee's opinions that "five-year-old children often do not need to be picked up" and that "a social caseworker is not a peace worker who may be needed to use physical strength and exertion on a regular basis" (ECF No. 28 at 16), directly contradict the agency's determination that SFSS employees, in fact, *do* need to pick up or restrain children on a regular basis. Notably, Sanders-Lee was never actually employed as an SFSS, but DFS is presumably aware of what sorts of activities its employees routinely perform. There is thus no genuine dispute that Sanders-Lee could not have performed the essential functions of the job without a reasonable accommodation. I therefore evaluate whether she could do so if she had a reasonable accommodation.

A request for accommodation by an employee triggers the "interactive process" under the ADA. *Humphrey v. Mem'l Hosps. Assoc.*, 239 F.3d 1128, 1137 (9th Cir. 2001). Then, the "employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). "Reasonable accommodations" may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). "The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Zivkovic*, 302 F.3d at 1089.

Here, the evidence shows that Clark County engaged in the interactive process in a good-faith effort to reasonably accommodate Sanders-Lee. It had her evaluated by a doctor to determine the scope of her injury and to assess what job functions she could perform. It engaged in direct conversation with her about possible accommodations. Sanders-Lee argues that she could have been accommodated with a desk job or reassignment to a "hotline position," or by not requiring her to walk, lift children, or stand. ECF No. 28 at 17. To avoid summary judgment, Sanders-Lee "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002). But

Clark County proffers evidence showing that the SFSS position requires an employee to walk and stand for long periods—as well as to perform other physical demanding duties, such as picking up children and loading them into vehicles—thus making Sanders-Lee's requested accommodation unreasonable. DFS's job posting, the analysis of the job's requirements, and common sense all dictate that a social worker, working with children and families that are sometimes in crisis, would need to be able to walk or stand for long periods of time, assist with moving children as needed, and perform other physical activities to ensure the safety and welfare of those children and families. I therefore do not find any genuine dispute that it was reasonable for Clark County to reject Sanders-Lee's suggested accommodation and turn to Sanders-Lee's argument that she could have been reassigned to a "hotline" position.

  Sanders-Lee argues that she was cross-trained[9] during the academy for a desk job that did not require any walking and did not involve any of the essential functions contained in the job posting for which she was hired. Clark County disputes Sanders-Lee's allegation that she was "cross-trained" to assist with an intake or "hotline" and argues that even if she did receive some training, the role she was hired to fill was that of an SFSS. It also asserts that no individual who was part of Sanders-Lee's training class was hired as or assigned to "the hotline" because (1) there were no openings for that team (ECF No. 22-6 at 2–3) and (2) "hotline" positions were given to experienced individuals, not new employees. *See* ECF No. 22-19 at 4 ("None of these [hotline] positions were open when [p]laintiff was hired or employed by [DFS] . . . [f]urther, the hotline positions are almost always filled by transfer employees before new employees are hired.").

---

[9] In her affidavit, Sanders-Lee submits that she received a full day of on-the-job training with the hotline (intake) unit, during which she learned that there was an opening for "senior staff" and that "they were filing positions for other staff" but did not provide any information regarding such positions. ECF No. 28 at 12.

14

The EEOC offers the following guidance concerning reassignment as a reasonable accommodation:

> The longer the period of time in which an employee has adequately performed the essential functions, with or without reasonable accommodation, the more likely it is that reassignment is appropriate if the employee becomes unable to continue performing the essential functions of the current position due to a disability. If, however, the probationary employee has never adequately performed the essential functions, with or without reasonable accommodation, then s/he is not entitled to reassignment because s/he was never "qualified" for the original position. In this situation, the employee is similar to an applicant who applies for a job for which s/he is not qualified, and then requests reassignment. Applicants are not entitled to reassignment.

EEOC Enforcement Guidance No. 915.002 (Oct. 17, 2002).[10]

Sanders-Lee never fully performed the essential functions of the SFSS role because she was still on probation and in the training academy when she requested accommodations. Rather, up until the bus-training day when her knee pain flared up, she performed the functions of a trainee, not of the SFSS role. Consequently, she was not qualified for the SFSS position and is therefore not entitled to reassignment. *See O'Brien v. Napolitano*, 2012 WL 423732, at *16–17 (N.D. Cal. Feb. 8, 2012) (granting employer's summary-judgment motion because there was no issue of fact that plaintiff was entitled to reinstatement when employee was on probation, did not pass the training requirement, and never adequately performed the essential functions); *see also Kennelly v. Penn. Turnpike Comm'n*, 208 F. Supp. 2d 504, 512 (E.D. Pa. 2002) (granting employer's motion for summary judgment in part because the plaintiff was a probationary employee who never adequately performed the essential functions of the job).

Even if Sanders-Lee could demonstrate that she was able to perform the essential functions of the SFSS position—which would then trigger reassignment—the Ninth Circuit's rule provides that when "considering reassignment as a reasonable accommodation, an employer must consider not only those contemporaneously available positions but also those that will

---

[10] "As an administrative interpretation of the Act by the enforcing agency, these Guidelines, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (internal quotations omitted).

become available within a reasonable period." *Dark v. Curry Cnty.*, 451 F.3d 1078, 1090 (9th Cir. 2006). An employer need not create a new position to accommodate a disabled employee. *Wellington v. Lyon County Sch. Dist.*, 187 F.3d 1150, 1155 (9th Cir. 1999) ("[T]he ADA does not impose a duty to create a new position to accommodate a disabled employee."). Ultimately, other than her self-serving affidavit, Sanders-Lee offers no evidence that there were available "hotline" positions or any other open positions that she could have filled as a reasonable accommodation.

Because Sanders-Lee cannot perform the SFSS position with or without a reasonable accommodation, she is not a qualified individual under ADA. I need not reach the third prong of the discrimination analysis, involving whether she suffered an adverse employment action. So because Sanders-Lee cannot demonstrate that she qualified for reassignment or that reassignment was even available, I grant summary judgment in Clark County's favor on Sanders-Lee's claims of discrimination under the ADA and Nevada law.

   b. *Summary judgment on Sanders-Lee's ADA retaliation claim is appropriate because she cannot establish a prima facie case of retaliation.*

A prima facie case of retaliation under the ADA requires a plaintiff to demonstrate (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). Sanders-Lee can demonstrate that she was disabled and that she suffered an adverse employment action, but for the reasons described *supra* subsection *a*, there is no genuine dispute that Sanders-Lee was terminated for reasons other than her disability (namely, her inability to perform essential functions of the job to which she had applied). Clark County's justification for terminating Sanders-Lee is supported by the overwhelming weight of the evidence before the court; it is clear that Clark County attempted to engage in an interactive process with Sanders-Lee to work with her in spite of her injury up until the point at which the parties realized that she would not be able to fulfill the physical demands of the position. Sanders-Lee does not provide any evidence suggesting that DFS terminated her because of her accommodation request or

establishing a causal link between her disability and her termination, and for that reason, I grant Clark County summary judgment on Sanders-Lee's claim of retaliation under the ADA.

### IV. Conclusion

IT IS THEREFORE ORDERED that defendant Clark County's motion for summary judgment **[ECF No. 22] is GRANTED**. The Clerk of Court is directed to enter judgment accordingly and **CLOSE THIS CASE**.

DATED: May 4, 2023

_____
Cristina D. Silva
United States District Judge